Oscar DELGADO, Appellant,

v.

JIM WELLS COUNTY, Appellee.

No. 04–01–00563–CV.

Court of Appeals of Texas,
San Antonio.

May 31, 2002.

From the 79th Judicial District Court, Jim Wells County, Robert C. Pate, Judge.[1]

William J. Kolb, Law Offices of William J. Kolb, Alice, for Appellant.

Myra K. Morris, Will W. Pierson, Harry Apostolakopoulos, Chester J. Makowski, Royston, Rayzor, Vickery & Williams, L.L.P., Houston, for Appellee.

Sitting: SARAH B. DUNCAN, Justice KAREN ANGELINI, Justice SANDEE BRYAN MARION, Justice.

## OPINION

KAREN ANGELINI, Justice.

This is an appeal from the granting of a no-evidence motion for summary judgment in a suit brought under the Texas Whistle-blower Statute. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Oscar Delgado worked as a bailiff in the 79th Judicial District Court for eleven years. In April of 2000, Delgado's daughter accused the judge of the 79th Judicial District Court of sexually assaulting her while she was in the judge's office interviewing for a job. Delgado's daughter reported her complaint to the Alice Police Department. On May 10, 2000, Delgado talked with Texas Ranger Ray Ramon in the 79th Judicial District Courtroom about his daughter's complaint against the judge. Then, by letter dated May 15, 2000, the

---

1. Former district judge sitting by assignment.

judge terminated Delgado's employment as a bailiff effective May 12, 2000.

Delgado filed this suit against Jim Wells County under the Texas Whistleblower Statute. *See* TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp.2002). Delgado alleged that the county terminated him in retaliation for his good faith reporting of a violation of the law to an appropriate law enforcement authority, referring to his conversation with Ranger Ramon. The trial court granted the county's no-evidence motion for summary judgment. Delgado appeals, contending that there are disputed issues of material fact to preclude summary judgment and that summary judgment was improper because the county did not specify the grounds for summary judgment in its motion.

## STANDARD OF REVIEW

Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Gomez v. Tri City*

*Community Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex.App.-San Antonio 1999, no pet.). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). When the trial court does not state the specific grounds on which it granted summary judgment, we will affirm if any of the theories advanced is meritorious. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex.1993).

## DISCUSSION

The Texas Whistleblower Statute prohibits a governmental entity from terminating "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2002). The county contends that this statute does not apply here because there was no evidence that Delgado reported, in good faith, a violation of law to an appropriate law enforcement authority. Specifically, the county urges that Delgado's conversation with Ranger Ramon does not constitute a *report* within the meaning of the statute. The Texas Legislature did not indicate what qualifies as a report under this statute. The parties have cited no cases construing the meaning of the word "report" under the statute and we have found none.[2] Thus, we must determine its meaning.

In construing a statute, we must determine and give effect to the Legisla-

2. The county cites a case that illustrates what does *not* constitute a report. In *Clark v. Texas Home Health, Inc.*, 971 S.W.2d 435, 438 (Tex. 1998), the supreme court stated that "neither holding a press conference nor making a complaint to an employer was a 'report' that implicated the protection afforded by the Whistleblower Act." Neither of these situations is applicable to this case.

ture's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). Ordinarily, we look first at the statute's plain and common meaning. *Id.* Words in statutes have their ordinary meaning unless (1) the statute defines them, (2) they are connected with and used with reference to a particular trade or subject matter, or (3) are a term of art. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998); *Bouldin v. Bexar Co. Sheriff's Civil Serv. Comm'n,* 12 S.W.3d 527, 529 (Tex.App.-San Antonio 1999, no pet.). The dictionary definition of "report" is "to give an account of." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990).

The county contends Delgado's testimony establishes that he did not report a violation of the law to any law enforcement authority. Instead, the county urges, Delgado's conversation with Ranger Ramon amounted to a mere inquiry. Delgado testified in his deposition to the following:

Q: Did you say anything to the judge about what had happened?

A: No.

Q: Did you say anything to anyone with Jim Wells County about what had happened?

A: Not other than my wife.

Q: Did you say anything to any law enforcement official on the 27th about what had happened?

A: Not me. May the 10th.

Q: Did you say anything to any law enforcement official on the night of April the 26th?

A: Not me.

. . .

A: ... May the 10th is when I spoke to a Texas Ranger in the courtroom.

Q: That's Ray Ramon?

A: Yes. In the last bench.

Q: You-all sat in the back of the district courtroom on the last bench?

A: Yes, sir.

Q: Do you remember what time of day that was?

A: Before 11:00.

Q: You've known Ray Ramon for a number of years?

A: Yes, sir.

Q: He's an experienced officer with the Texas Rangers; is that correct?

A: Yes.

Q: And tell me what you told Ray Ramon?

A: I told him if he knew what's going in with my daughter's case, what's happening. Do you know if the FBI is coming in or not. He said, no, but—he said, "Your daughter's case is very similar to the one that the girl that happened in the Falfurrias," and I didn't ask him any names of the girl. But apparently two or three—there's another girl that complained to him and he picked up a statement from her that Terry did the same thing to her, fondled her, the same way he fondled my daughter but I didn't go into that.

Q: So it was obvious to you when you sat down with Ray Ramon in the courtroom that he knew what had happened to your daughter?

A: You can say that, yes, sir.

Q: Well, did you tell him what had happened?

A: No. I never tell him but he knew.

Q: Tell me how you believe that he knew. Because of what he said about—

A: About what he said. When he said, "your daughter's statement is very similar to the one from this girl from Falfurrias."

Q: Did you ever fill out any complaint, any document in writing, for any law enforcement official about what had happened?

A: No, sir, I didn't. Because I was staying away. My kids were in charge of that

. . .

Q: Now, did the conversation that you were telling us about with Ray Ramon, that was the only conversation that you ever had with a law enforcement officer?

A: Me, yes.

Q: And you don't know how that information, if it was, got back to Judge Canales?

A: Yes.

Q: That's a true statement that I just made?

A: Yes.

The county also refers the court to the police report made by Delgado's daughter. The police report states:

ON WEDNESDAY APRIL 26, 1900, OFFICER # 417 S. SOLIZ WAS DISPATCHED TO 200 N ALMOND IN REFERENCE TO A ASSAULT. UPON ARRIVAL, THIS OFFICER CONTACTED FRANCES DELGADO, WHO GAVE THE DETAILS OF THE OFFENSE FOR THIS REPORT.

In response, Delgado points to the following statements made by Delgado to Texas Ranger Ramon during their conversation in the courtroom as evidence creating a fact issue:

Well, you people afraid of him or what? I mean there's something wrong that he did. I believe my daughter.

We agree with the county. There is no evidence raising a fact issue regarding whether Delgado reported a violation of law to law enforcement. Giving the word "report" its ordinary meaning, there is simply no evidence that Delgado gave an account of anything to Ranger Ramon. The evidence merely shows that Delgado asked Ranger Ramon about the status of his daughter's case and that Delgado stated he believed his daughter. The evidence shows that Ranger Ramon was already aware of Delgado's daughter's complaint regarding the judge and of a similar complaint. This was not because of any information imparted to him by Delgado, but apparently because of information received from another source at an earlier time. It is apparent that Delgado was not giving Ranger Ramon an account of anything having to do with his daughter's complaint against the judge, but rather was asking Ranger Ramon for information about the complaint and perhaps expressing his frustration that no apparent action had been taken by the FBI. Summary judgment was correctly granted on this ground and, therefore, we need not address the county's alternate ground that there was no evidence that Delgado's discharge was retaliatory.[3]

We affirm the trial court's judgment.

**3.** Delgado also contends the trial court erred in granting summary judgment without requiring the county to specify the grounds for summary judgment. A review of the no-evidence motion for summary judgment, however, shows that the county did set forth grounds sufficient to satisfy Tex.R. Civ. P. 166a(c), (i).