Opinion issued November 19, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00827-CV

———————————

**BRAZORIA COUNTY, Appellant**

**V.**

**TRACY READ, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 118810-CV**

---

## MEMORANDUM OPINION

This is a whistleblower action. Appellee Tracy Read is a court bailiff in Brazoria County, Texas. Read suspected the Brazoria County District Clerk was manipulating the jury selection process, and he reported his suspicions to the district judge in whose courtroom he served. Read claims that after he made this report, the

judge stopped calling on him to serve as a bailiff, and he was "blackballed" from serving as a bailiff in other district courts in Brazoria County. Read sued Brazoria County, his employer. Read alleges the County took these adverse employment actions against him in retaliation for his report in violation of the Texas Whistleblower Act. *See* TEX. GOV'T CODE §§ 554.001–.010.

The County filed a plea to the jurisdiction. It argued that any adverse employment actions Read suffered were taken by the district judge, a state official, and not by the County, such that the County retains its governmental immunity. The trial court denied the plea, and the County filed this interlocutory appeal.

We agree with the County. Because Read did not show that the County took an adverse employment action against him, the County retains immunity. We reverse and render judgment dismissing this suit with prejudice.

**Background**

Read began working for the County in 2009. There is no dispute he was a County employee throughout the events giving rise to this case. The County issues his paychecks and W-2s, gives him statutory raises, and maintains him on its employee roster.

Read started with the County as a jailer in the Brazoria County Sheriff's Office. In 2018, he transferred out of the Sheriff's Office and started working as a district court bailiff. But the County does not assign bailiffs to courtrooms. Instead,

2

it establishes a pool of bailiffs, and each district judge chooses a bailiff from the pool.

When he began working as a bailiff in 2018, Read served in the 412th Judicial District Court. At the time, the 412th District Court was presided over by Judge Ed Denman. Judge Denman retired later that year and was succeeded by elected Judge Justin R. Gilbert. Judge Gilbert took the bench in January 2019. When he assumed the bench, Judge Gilbert had sole discretion to ask any bailiff from the pool to serve in his courtroom. He chose Read.

Read considered himself the bailiff of the 412th District Court, and he viewed the district court judge as his boss. As Read saw things, he did not report to anyone other than Judge Gilbert. But Judge Gilbert did not have the authority to hire or fire Read, nor did he set Read's salary or approve his vacation time. Judge Gilbert controlled Read's work activities only when Read was serving in his courtroom.

At some point during his tenure as Judge Gilbert's bailiff, Read learned that the Brazoria County District Clerk's Office was segregating juror cards by race and geography before distributing them to the district courts. Read decided to make a complaint.

At the time he made the complaint in August 2021, Read's wife was running for the Office of the District Clerk. One of her opponents was the incumbent Deputy Clerk. The parties disagree about the date on which Read discovered the irregular

3

way the District Clerk's Office was preparing venire panels. Read contends he did not confirm the irregularities until August 9, 2021. The County claims he knew about the irregularities earlier but withheld the information until after his wife announced her candidacy for District Clerk.

Read sought out Judge Denman, who had retired by this point, for advice on how to proceed. On August 11, 2021, Read met with Judge Denman and told him the District Clerk's Office was segregating juror cards by race and geography. Judge Denman advised Read to report the allegations to the Texas Rangers. But instead of going to the Rangers, Read contacted Judge Gilbert. Read testified in a deposition that he went to Judge Gilbert before contacting the Rangers because "I believe that my judge who I work for . . . deserves the right to know."

Read met with Judge Gilbert around August 17, 2021, and informed him of the allegations that the District Clerk's Office was engaging in jury tampering. Later that day, Judge Gilbert notified the then-presiding judge, Judge Patrick Sebesta, who in turn contacted the Brazoria County District Attorney. The District Attorney requested the Texas Rangers investigate Read's allegations.

Judge Gilbert decided to stop calling Read to serve as his courtroom bailiff until the Rangers finished their investigation. He did so in part because he expected that both he and Read would be subpoenaed to testify before a grand jury. He also "lost confidence" and "lost trust" in Read because he did not believe he was "getting

4

the full story from [Read] as to when he knew about th[e] jury issue." And when the Rangers later issued a report on their investigation, Judge Gilbert understood it to suggest Read may have known of the irregularities in the District Clerk's Office long before he reported them. The report thus confirmed for Judge Gilbert that he did not want Read to serve as his bailiff. The last day Read served as a bailiff in Judge Gilbert's courtroom was August 26, 2021. Judge Gilbert testified in a deposition that he "made the decision not to have [Read] come to work in [the 412th District Court] anymore," but Read "could go and bailiff in any other court he wanted to."

Read disputes this. He contends that in addition to not being called to serve as a bailiff in Judge Gilbert's courtroom, he has been "blackballed," *i.e.*, "he has been prevented from working as a bailiff" in the Brazoria County district courts "since December 2021." However, Read also testified he was unaware of any evidence that any County employee or official interfered with his ability to serve as a bailiff. He agreed Judge Gilbert was "the ultimate decision maker" on his service as a bailiff in the 412th District Court.

Although Judge Gilbert has not called Read to serve as bailiff since 2021, and Read contends he has not served as bailiff in any other Brazoria County district court since 2021, the parties agree the County has not fired Read. Read remains on the County's payroll budget, and he received statutory raises in 2021 and 2022.

Read sued the County, alleging it retaliated against him by taking adverse employment actions against him that violated the Texas Whistleblower Act. The County filed a plea to the jurisdiction, arguing that any adverse employment actions were taken by Judge Gilbert, a State employee, and not the County.

After a hearing, the trial court denied the County's plea, concluding the evidence showed the County ultimately controlled the conditions of Read's work environment. The trial court reasoned that the district judges' discretion to choose the bailiffs serving their courtrooms was of "no consequence" because the County "runs the assignment of work" and "maintains control over the employee's work," such that the County remains "liable for the wrongful conduct of its non-employees." This appeal followed.

**Analysis**

In a single point of error, the County contends the trial court erred in denying its plea to the jurisdiction. It argues that Read's ability to make a claim under the Texas Whistleblower Act depends on his ability to show that *his employer*—the County—took an adverse employment action against him in retaliation for reporting a violation of the law. But because the only alleged adverse actions taken against Read were taken by Judge Gilbert, an elected official of the State of Texas, and not the County, Read cannot state a claim under the Act. And because he cannot state a

6

claim, Read's suit does not fall within the Act's waiver of governmental immunity, such that the trial court lacks subject matter jurisdiction.

## I.      Standard of Review.

The existence of subject matter jurisdiction is a question of law that we review de novo review. *See Anderson v. Bessman*, 365 S.W.3d 119, 123 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A jurisdictional challenge based on governmental immunity may be brought in a plea to the jurisdiction. *See City of Hous. v. Downstream Envt'l.*, 444 S.W.3d 24, 31 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

A plea to the jurisdiction can challenge the sufficiency of the jurisdictional facts pleaded in the petition, or it can challenge the existence of jurisdictional facts. *See City of Hous. v. Nicolai*, 539 S.W.3d 378, 385 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Here, the County's plea challenges the existence of a jurisdictional fact, namely, whether the County took adverse action against Read in retaliation for reporting irregularities in the District Clerk's Office.

Because the County's plea challenges the existence of jurisdictional facts, we consider both the pleadings and any evidence relevant to the jurisdictional issues raised by the parties. *See Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 76 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). If the evidence raises a fact question as to the jurisdictional issue, then the plea must be denied, and a factfinder must resolve the

7

issue. *See Nicolai*, 539 S.W.3d at 386; *Lenoir*, 491 S.W.3d at 76. But if the evidence is conclusive, or if it does not raise a fact question about the jurisdictional issue, then we decide the jurisdictional issue as a matter of law. *See Lenoir*, 491 S.W.3d at 76. Conclusive evidence includes undisputed evidence that solely permits one logical conclusion, evidence that is admittedly true, and evidence that is conclusively disproved. *See id.*

The standard of review governing pleas that challenge the existence of jurisdictional facts mirrors the one for summary judgment. *See id.* The County bears the burden to present conclusive evidence that the trial court lacks jurisdiction; if the County carries that burden, then Read must present evidence sufficient to raise a fact issue. *See Nicolai*, 539 S.W.3d at 386. We must accept as true all evidence favorable to Read, indulging every reasonable inference and resolving any doubts in his favor. *See Lenoir*, 491 S.W.3d at 76–77.

## II.     The Whistleblower Act and Governmental Immunity.

The County's plea was based on governmental immunity. Governmental immunity is derived from sovereign immunity. *See City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). "Sovereign immunity protects the State from lawsuits for money damages," *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002), while governmental immunity protects the State's political subdivisions, including counties, from suit and liability unless the legislature has

waived that immunity. *See Harris Cnty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018). Any legislative waiver of a county's immunity must be "'clear and unambiguous,'" and we construe such statutory waivers "narrowly." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008) (citing TEX. GOV'T CODE § 311.034).

In the absence of a waiver, governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the County has been sued. *Id.* Subject matter jurisdiction is essential to a court's authority to decide a case, s*ee Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993), and the plaintiff bears the initial burden to affirmatively show the trial court's jurisdiction. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

Here, Read sued under the Texas Whistleblower Act ("TWA" or the "Act"). *See* TEX. GOV'T CODE §§ 554.001–.010. He alleges the County violated the Act's anti-retaliation provision, which states,

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

*Id.* § 554.002(a).

The Act also contains an express but limited waiver of governmental immunity: "A public employee who alleges a violation of this chapter may sue the

9

employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id*. § 554.0035.

"[I]t necessarily follows from this language that [Read] must actually allege a violation of the Act for there to be a waiver from suit. Therefore, the elements under section 554.002(a) must be considered in order to ascertain what constitutes a violation, and whether that violation has actually been alleged." *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). This means the elements of a whistleblower claim under section 554.002(a) are themselves "jurisdictional facts necessary for determining whether [Read's] claim falls within the jurisdictional confines of section 554.0035." *City of Fort Worth v. Prigden*, 653 S.W.3d 176, 182 (Tex. 2022) (citation and internal quotation marks omitted)). In other words, to determine whether Read's suit falls within section 554.0035's immunity waiver, we consider whether Read raised a genuine issue of material fact as to each element of his retaliation claim under section 554.002(a). *See Lueck*, 290 S.W.3d at 882.

## III. The County Has Immunity Because Read Cannot Establish the Elements of a Retaliation Claim.

The elements of a retaliation claim under section 554.002(a) are: "(1) that the plaintiff was a public employee (2) that the defendant was a state agency or local government (3) that the plaintiff reported in good faith a violation of law (4) to an appropriate law enforcement agency and (5) that the plaintiff's report was the but-

for cause of *the defendant's* suspending, firing, or otherwise discriminating against the plaintiff at the time the defendant took that action." *Guillaume v. City of Greenville*, 247 S.W.3d 457, 461 (Tex App.—Dallas 2008, no pet.) (emphasis added) (citing TEX. GOV'T CODE § 554.002(a)).

The County's plea focuses on the fifth element. The County contends that to make a claim under the Act, a plaintiff must show that *his government employer* took an adverse personnel action against him. And Read does not dispute this requirement; his brief frames this element as requiring a showing that "*the employer* took an adverse employment action against the employee because the employee made the report." The parties thus agree that a viable retaliation claim under the Act requires a plaintiff to establish that his *employer* took the adverse personnel action.

This narrows the issue before us. The County does not dispute that adverse actions were taken against Read; instead, its argument is that any adverse actions were taken by someone other than the County. And the only adverse actions about which Read complains are that: (1) he has not been called to serve as a bailiff in Judge Gilbert's courtroom; and (2) he has been "blackballed" from serving as a bailiff in other district courts in Brazoria County. Read attributes both of those actions solely to Judge Gilbert, and he admits he has no evidence suggesting that any County employee or official interfered with his ability to find work as a bailiff. The

11

question before us is thus whether Judge Gilbert's actions or inactions can be imputed to the County for purposes of the Act.[1]

## A. Judge Gilbert's Actions Cannot Be Imputed to the County.

Read contends we should treat the County as his employer for purposes of the alleged retaliatory acts because the County was responsible for the terms and conditions of his employment as a bailiff. Read's argument turns on the idea that the County exercises enough control over the conditions of his service as a bailiff that the County should be held liable for Judge Gilbert's allegedly retaliatory conduct, even though Judge Gilbert is a State employee who does not employ Read. We disagree that Judge Gilbert's actions can be imputed to the County.

Texas law gives control of the selection and service of bailiffs to district judges. A bailiff "holds office at the will of the judge of the court that the bailiff or grand jury bailiff serves," TEX. GOV'T CODE § 53.005, and acts "under the direction of the court." TEX. CODE CRIM. PROC. art. 36.24. As a matter of law, the County had no control over Judge Gilbert's courtroom proceedings, including his decision to call or not call Read to serve as a bailiff in his courtroom.

The record also supports this conclusion. Judge Gilbert testified that he alone decides which bailiff to call to his courtroom, and that he alone decided not to call

---

[1] We express no opinion on whether Read has established any other element of a retaliation claim under the Act.

Read because he had "lost confidence" in him. Likewise, Read testified that he considered Judge Gilbert to be his boss and the only person to whom he answered on courtroom proceedings, and that Judge Gilbert exercised supervisory control over him in the courtroom. Read offered no evidence that Judge Gilbert was influenced by someone else to stop calling on Read. Read also offered no evidence that the County influenced or persuaded other judges to not call him to serve, or even evidence that he attempted to serve in other Brazoria County district courts but was refused.

The decision to stop calling Read as a bailiff in the 412th District Court was made solely by Judge Gilbert. It was not a decision made, or even influenced, by the County. And the County likewise has no control over Judge Read's or any other district judge's decision to call or not call Read to serve as a bailiff. For the same reasons Judge Gilbert has the authority to decide who will serve as a bailiff in his courtroom and for how long, other district judges in Brazoria County have that same authority. *See* TEX. GOV'T CODE § 53.005; TEX. CODE CRIM. PROC. art. 36.24. Therefore, there is no evidence the County controlled the terms of Read's service as a bailiff in Judge Gilbert's courtroom, or in any other district court.

Indeed, courts that have considered the issue have concluded that district judges have sole control not just over bailiffs but also other courtroom personnel. Although not squarely on point here (because the appointment of other personnel is

13

often governed by statutes not applicable to bailiffs), this line of cases is instructive. For example, in *Bloom v. Bexar County*, the Fifth Circuit held that a county was not a court reporter's employer for purposes of the Americans with Disabilities Act because court reporters are subject to the sole control and serve at the pleasure of district judges, such that "Bexar County had no right to control the means and manner of Bloom's performance." 130 F.3d 722, 726 (5th Cir. 1997). In *Clark v. Young*, the Fort Worth Court of Appeals held that a court coordinator served at the pleasure of the district judge and thus could be terminated by the judge without cause, notice, or hearing. 787 S.W.2d 166, 168 (Tex. App.—Fort Worth 1990, pet. denied). And in *Desantiago v. West Texas Cmty. Supervision & Corr. Dep't*, the El Paso Court of Appeals held that district judges have ultimate control over personnel decisions concerning probation officers. 203 S.W.3d 387, 397 (Tex. App.—El Paso, no pet.). While not dispositive, these cases support the proposition that district judges have control over their courtroom personnel, and thus that Judge Gilbert, and not the County, had control over Read's service as a bailiff and his work environment.

Both Read and the trial court rely on *Lockard v. Pizza Hut*, 162 F.3d 1062 (10th Cir. 1998), to support a contrary conclusion. That reliance is misplaced. *Lockard* arose out of a situation in which a waitress was harassed by unruly customers. *See id*. at 1072. The restaurant's manager had several options for dealing

14

with the customers but failed to act, resulting in a hostile work environment for the waitress. *See id.* at 1073–75. The Tenth Circuit concluded the restaurant could be liable under Title VII for the customers' behavior under a hostile work environment theory, notwithstanding that the customers were neither agents nor employees, because the restaurant "ultimately controls the conditions of the work environment." *See id.*

Here, the trial court's order denying the County's plea concluded that "[t]his case is no different" than *Lockard*. It reasoned that "the County ultimately controls/ed the conditions of [Read's] work environment," meaning it "became liable for [the work environment] when it condoned [Judge Gilbert's] conduct and subjected its employee to it."

This application of *Lockard* extends too far. Aside from the fact that this is not a Title VII action or one involving a hostile work environment claim, one basis for the Tenth Circuit's holding was that the restaurant manager in *Lockard* had the explicit authority to ask the customers to either stop their offensive behavior or leave. *See id.* at 1074. The County had no analogous option here. Judge Gilbert had the sole authority and discretion to select the bailiff to serve in his courtroom and to end the bailiff's service. *See* TEX. GOV'T CODE § 53.005; TEX. CODE CRIM. PROC. art. 36.24. The County had no ability to control those decisions, and it could not ask Judge Gilbert to step down from the bench or to recall Read as his bailiff in the same

15

way that a restaurant manager can ask unruly customers to leave. The record does not show that the County "condone[d]" any action or inaction by Judge Gilbert or any other district court judge, or that it "subjected" Read to anything Judge Gilbert did or failed to do. Therefore, *Lockard* does not support the conclusion that the County can be held liable for the actions of a State district judge.

Read's reliance on *Delgado v. Jim Wells Cnty.*, 82 S.W.3d 640 (Tex. App.—San Antonio 2002, no pet.), is equally unavailing. Like this case, *Delgado* involved a bailiff who made a whistleblower claim against the county that employed him after a State district judge terminated his service as a bailiff. *See id.* at 641. The trial court granted the county's no evidence motion for summary judgment, and the San Antonio Court of Appeals affirmed. *See id.* at 640.

Read contends the *Delgado* court "assumed that the judge's termination of the bailiff's employment was attributable to the county." But the opinion contains no support for that contention and no indication the court of appeals made any such assumption. To the contrary, the court of appeals affirmed summary judgment for the county based on the bailiff's failure to establish the "report" element of a whistleblower claim, which is not at issue here. *See id.* at 643 ("We agree with the county. There is no evidence raising a fact issue regarding whether Delgado reported a violation of law to law enforcement."). *Delgado* does not suggest a district judge's

16

decision about the service of a bailiff in his courtroom can be attributed to the bailiff's county employer, nor does it support the position Read takes here.

Because the County had no control over the decisions of Brazoria County district judges, including Judge Gilbert, about whom to call or not call to serve as bailiffs, those decisions cannot be imputed to the County. Moreover, there is no evidence that the County influenced Judge Gilbert or any other judge to not call Read to serve as bailiff. As a result, Read has failed to raise a genuine issue of material fact on the final element of his whistleblower claim, requiring that *his employer* take retaliatory action against him. *See* TEX. GOV'T CODE § 54.002(a). The trial court erred in denying the County's plea.

### B. Judge Gilbert Did Not Act as the County's Agent.

Read also contends the County can be held liable for Judge Gilbert's actions because Judge Gilbert's "functioning is county-based." This argument appears to rely on an agency theory under which Judge Gilbert acts as an agent of the County. But any such contention conflates a judicial district's geographical borders with a county's existence as a unit of government and political subdivision of the State, *see, e.g.*, TEX. CIV. PRAC. & REM. CODE §101.001(3)(B), and it is contradicted by the laws establishing the Texas district courts.

The Texas Constitution divides the State into judicial districts, each of which is served by one or more judges. *See* TEX. CONST. art. V, § 7(a) ("The State shall be

17

divided into judicial districts, with each having one or more Judges as may be provided by law or by this Constitution."). The judicial districts are thus a part of the court system of the State of Texas; they are not a component of the government of the counties in which they sit. *See id.*

Judicial districts are created when the legislature, the Judicial Districts Board, or the Legislative Redistricting Board defines their geographical boundaries. *See id.* § 7a(i). The legislature has drawn the judicial districts to follow county lines, but there is nothing in the Texas Constitution that requires it. In other words, the fact that a judicial district shares its borders with those of a county does not mean the judicial district is a part of the county's government; it means only that the legislature defined the judicial district's borders to run along the county's borders, presumably because using the county borders made sense. But each judicial district nevertheless remains a part of the State's judicial system; they are not within a county's government.

Here, the legislature has defined the 412th Judicial District, the judicial district in which Read worked, as being "composed of Brazoria County." TEX. GOV'T CODE § 24.556. The geographical borders of the 412th Judicial District are thus coterminous with those of the County. But that does not mean the 412th Judicial District is a part of the County; it means only that they share one another's borders.

18

State district judges are a part of this statewide judicial system. *See* TEX. CONST. art. V, § 7(a); *Walker v. Hartman*, No. 09-19-00061-CV, 2020 WL 1465973, at \*6 (Tex. App.—Beaumont Mar. 26, 2020, no pet.) (mem. op.) ("As a district judge, Walker is employed by the State of Texas, not Jefferson County."); *accord Bloom*, 130 F.3d at 725 ("[S]tate judges are elected officials of the State of Texas and are not agents, officials, or employees of the county." (citing TEX. CONST. art. V, § 7(a)); *In re Wice*, 668 S.W.3d 662, 676 (Tex. Crim. App. 2023) ("Under the Texas Constitution, elected district judges have the ability to serve state-wide when properly requested."). As with judicial districts, district judges are a part of the court system of the State of Texas rather than the governments of the counties in which their courts are located. Neither Judge Gilbert nor the 412th Judicial District is a part of the County's governmental structure, and thus their actions or failures to act in selecting bailiffs are not taken as agents of the County.

The cases upon which Read relies to support his agency theory are inapposite. He contends Judge Gilbert is an agent of the County because "[e]lected officials have repeatedly been found to be agents of the county in which they operate." To be sure, elected officials *of a county* can be agents of that county, and the cases Read cites support that proposition. *See Davis v. Ector Cnty., Texas*, 40 F.3d 777, 784 (5th Cir. 1994) (Ector County District Attorney was a "county official"); *Dall. Cnty. v. Gonzales*, 183 S.W.3d 94, 101 (Tex. App.—Dallas 2006) (actions of county

19

constable could be attributed to county). But here, Judge Gilbert is an elected official of the State of Texas, not the County, and thus he did not act as an agent for or on behalf of the County. Accordingly, we affirm the County's sole point of error.

## C.    Read's Claims Must Be Dismissed With Prejudice.

Having concluded the trial court erred in denying the County's plea to the jurisdiction, we next consider whether we must render judgment dismissing Read's claims or remand and allow him to replead. "[S]o long as [a plaintiff's] pleading does not affirmatively demonstrate the absence of jurisdiction, they should be given an opportunity to amend." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022). But where a party's pleadings "affirmatively negate jurisdiction," the appropriate remedy is to render a judgment dismissing the claim. *See Lueck*, 290 S.W.3d at 885–86 (dismissing whistleblower claim with prejudice because plaintiff's pleadings showed he could not establish the "report" element of a whistleblower claim and thus affirmatively negated jurisdiction).

Read's claim falls into the latter category of those that "affirmatively negate jurisdiction." *Id*. Read ultimately points to no action or omission *by the County* that constitutes an adverse action taken in response to his report of irregularities in jury venire selection. Read concedes the County has not fired him, and he admits he has no evidence to suggest any County official or employee interfered with his ability to find work as a bailiff. Instead, Read relies solely on Judge Gilbert's actions as the

20

basis for his retaliation claim. Read argues in his brief that he "was dismissed by Judge Gilbert" and that "Judge Gilbert terminated him," and Read testified during his deposition that "[e]verything lies with [Judge] Gilbert." But a retaliation claim under the Act requires that the adverse action be taken by Read's employer, *see* TEX. GOV'T CODE § 552.002(a), and Judge Gilbert was not Read's employer. The County is. And as Judge Gilbert is an elected official of the State of Texas whose decisions about courtroom personnel are not subject to the County's control, his actions cannot be imputed to the County.

Because Read has not shown that his employer—the County—took an adverse action against him, he has not raised an issue of a material fact with regards to that element of a retaliation claim under the Act. *See* TEX. GOV'T CODE § 54.002(a); *Lueck*, 290 S.W.3d at 882. And because he has not raised a material issue of fact on each element of his claim, Read's case does not fall within the Act's immunity waiver. *See* TEX. GOV'T CODE § 554.0035; *Prigden*, 653 S.W.3d at 182. His suit is thus barred by governmental immunity, the trial court lacks subject matter jurisdiction over it, and his pleadings "affirmatively negate jurisdiction." *Lueck*, 290 S.W.3d 876, 885–86. Therefore, Read's claims must be dismissed with prejudice.

## Conclusion

We reverse the trial court's order denying the County's plea to the jurisdiction, and we render judgment dismissing Read's claims against the County with prejudice.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.