

# NUMBER 13-23-00276-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LINCOLN PROPERTY COMPANY,
SP II LIMITED PARTNERSHIP, AND
SAN ANTONIO HOUSING AUTHORITY
FOUNDATION, INC.,                                                    Appellants,

v.

LETICIA HERRERA AS
REPRESENTATIVE OF THE ESTATE
OF MARIA L. HERRERA,                                                  Appellee.

## ON APPEAL FROM THE 73RD DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Peña**

Appellants Lincoln Property Company (Lincoln), SP II Limited Partnership (SP II),

and San Antonio Housing Authority Foundation, Inc. (SAHA) appeal the denial of their motion to dismiss and plea to the jurisdiction filed against appellee Leticia Herrera, as Representative of the Estate of Maria L. Herrera. By one issue, appellants argue that the trial court erred in denying their plea to the jurisdiction. We reverse and remand.

## I.  BACKGROUND[1]

On May 31, 2022, Herrera filed suit against appellants. Herrera's original petition raised a premise-liability claim and alleged that Maria Herrera, Leticia's mother, was injured at Legacy at Science Park, an apartment complex dedicated to public housing located in San Antonio. Relevant here, the petition alleged as follows:

> At all times material to this cause of action, [SAHA] owned the premises in question, and [Lincoln] managed, controlled, and/or operated the premises in question. On or about June 2, 2020, [Maria] tripped and fell hard on the sidewalk/entryway walking toward her apartment. The sidewalk/entryway upon which [Maria] fell w[as] uneven in many places, broken, and in need of repair to avoid catching tenant's and/or guest's shoes and causing them to fall. There were no warning signs posted in the area to warn [Maria] of this dangerous condition, and no equipment or materials for the purposes of preventing or reducing the risk of tripping and/or falling as a result of the uneven, broken, unreasonably dangerous sidewalk/entryway.

The petition further alleged that the "uneven, broken sidewalk/entryway" was the "sole means of ingress and egress" to Maria's residence; appellants "knew or should have known of the uneven, broken sidewalk/entryway"; "[a]n owner or occupier of ordinary prudence under the same or similar circumstances would have warned tenants and guests like [Maria] of the danger presented by the uneven, broken sidewalk/entryway";

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Fourth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

"[a]n owner or occupier of ordinary prudence under the same or similar circumstances would have made the premises reasonably safe"; appellants "made no effort to warn [Maria] of the uneven, broken sidewalk/entryway"; appellants "made no effort to fix the floor"; appellants "should have anticipated it would be unreasonable for [Maria] to take precautions that could have reduced her risk of encountering the uneven, broken sidewalk/entryway"; and "[a]n owner or occupier of ordinary prudence under the same or similar circumstances would have foreseen that [Maria's] injuries . . . might reasonably result from a broken, uneven sidewalk/entryway immediately in front of the sole means of ingress and egress to an apartment."

On April 3, 2023, appellants filed their "motion to dismiss for lack of jurisdiction," alternatively styled a "plea to the jurisdiction." Appellants, in their motion to dismiss, argue that the trial court lacks subject matter jurisdiction because Herrera "has not — and cannot — plead sufficient facts to show" a waiver of immunity. In particular, appellants argued that Herrera "has not alleged that [appellants] had actual knowledge of the alleged defective condition," and "the facts show that [Herrera] cannot cure this defect in pleading by repleading her claims." As an exhibit, appellants attached a copy of Herrera's discovery responses, wherein Herrera states that: Maria "did not notify [appellants] of [the] uneven pavement/step" prior to the accident, and Maria "had never tripped or fell on [the] sidewalk/step till the day of the incident." The motion also included two verified affidavits. Gary McLaurin, a representative of SAHA, attested as follows:

> [SP II] was created in 2001 for the sole purpose of holding title to real property for the benefit of SAHA. On October 10, 2001, SAHA transferred title to the Property to [SP II].
>
> [SP II] owns and operates the Property solely upon the direction of

3

SAHA and exercises no discretion in its activities. [SP II] has no discretion to engage in any activity such as capital improvements like replacing sidewalks or apartment foundations without SAHA's direction and approval.

The location where [Herrera] claims [Maria] fell is a portion of the Property that was leased by [Maria] and would only be used by [Maria] and her guests. Additionally, the lease describes patios and porches as areas reserved for the occupant's use only.

Less than two years prior to the alleged accident on October 19, 2018, the Texas Department of Housing and Community Affairs completed an inspection of the Property and did not report any defects in the sidewalks or entryways of any apartment on the Property.

Appellants also provided the affidavit of Teresa Ring-Rooney, Lincoln's regional property manager. This affidavit provided as follows:

[Lincoln] manages [the Property] for SAHA, according to a management agreement that reserves all rights to approve and direct capital improvements in SAHA. With regard to capital improvements, Lincoln operates solely upon the direction of SAHA, and exercises no discretion in such activities.

. . . .

Lincoln does not have independent authority to replace the portion of the Property that [Herrera] alleges was defective. Lincoln was never notified that the defect [Herrera] alleges existed. However, if [Maria] did so notify Lincoln, Lincoln would have required authority from SAHA to replace the broken sidewalk/entryway.

Lincoln uses Yardi Property Management Software to maintain records of all requests for service and repairs, complaints, and checks or maintenance performed by the department throughout the city.

[Ring-Rooney] searched the Yardi Property Management Software database and found there had been no requests for service or repairs, complaints, of the part of the Property about which [Herrera] complains in the two years preceding [the] fall.

In their motion to dismiss, appellants argued that SAHA is entitled to governmental immunity as a housing authority under Texas Local Government Code § 392.006, which

provides that "a housing authority is a unit of government" under the Texas Tort Claims Act (TTCA). *See* TEX. LOCAL GOV'T CODE § 392.006. Appellants also argued that SP II and Lincoln, although private entities, are entitled to share in SAHA's governmental immunity because both lacked any discretion to have addressed the complained-of defect. They further argued that they are entitled to immunity because Maria was a licensee and Herrera "cannot plead facts to establish that [appellants] had actual notice of the alleged dangerous condition."

> In our case, [Herrera] admits that [appellants] were never informed of the subject sidewalk/entryway before the accident. . . . Additionally, the Affidavits of [McLaurin] and [Ring-Rooney] establish that [appellants] never received any complaints of defective sidewalks or entryways anywhere on the Property. . . . Therefore, not only has [Herrera] failed to plead any facts to establish actual knowledge, but the facts that have been produced affirmatively show that no actual knowledge existed. . . . It is undisputed that [appellants] did not have actual notice of any defect in the subject portion of the Property. . . . Therefore, [Herrera] has failed to plead sufficient facts to grant [the trial court] subject-matter jurisdiction of [appellants] and [Herrera's] cause of action should be dismissed with prejudice.

After appellants filed their motion to dismiss, Herrera filed her first amended petition. The amended petition replaced the original petition's use of the term "sidewalk/entryway" with the word "sidewalk." The amended petition alleged that: "[t]his sidewalk [was] located in a common area of the premises, [and it was] under [appellants'] control," and "[a]s a tenant of the apartment complex, [Maria] has invitee status while in the common areas of the premises under [appellants'] control." Based on appellants' jurisdictional evidence, Herrera further alleged in her amended petition that appellants' "agents inspected the property and were aware of the dangerous condition. Furthermore, [appellants] and their agents would have known independently of this condition or should have known of the condition."

5

Appellants replied to Herrera's response to their motion to dismiss and for the first time argued that Herrera "has not properly alleged that [appellants] had constructive knowledge of any defective condition and [appellants'] uncontroverted evidence proves they did not." This reply was filed on the same day of the hearing on appellants' motion to dismiss.[2] Following the hearing, the trial court entered its order denying appellants' motion to dismiss. This appeal followed.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

"Sovereign immunity protects the [s]tate from lawsuits for money damages," *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002), and "political subdivisions derive governmental immunity from the state's sovereign immunity." *City of Houston v. Williams*, 353 S.W.3d 128, 134 & n.5 (Tex. 2011) (noting that "[g]overnmental immunity is distinct from sovereign immunity, and refers to the protection afforded to political subdivisions such as counties, cities, school districts, and others" (citation omitted)). Political subdivisions are entitled to governmental immunity unless it has been waived. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Absent waiver, sovereign immunity deprives a trial court of subject-matter jurisdiction. *Id*.

The TTCA waives governmental immunity from suit for "personal injury and death so caused by a condition or use of tangible property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The TTCA specifically addresses

---

[2] No record of this hearing was made.

premise-defect claims in § 101.022, which provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id*. § 101.022(a). The duty owed to a licensee requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016). Accordingly,

> A property owner is liable to a licensee only if the owner has actual knowledge of the condition that injured the claimant. Actual knowledge rather than constructive knowledge of the dangerous condition is required. Furthermore, the licensee must show that the owner actually knew of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition could develop over time.

*Wilson v. Nw. Tex. Healthcare Sys., Inc.*, 576 S.W.3d 844, 850 (Tex. App.—Amarillo 2019, no pet.) (citations omitted).

However, "[i]f the claimant pays for use of the premises, the [governmental unit's] duty is elevated to that owed to an invitee." *City of El Paso v. Viel*, 523 S.W.3d 876, 892 (Tex. App.—El Paso 2017, no pet.) (citing *City of Dallas v. Davenport*, 418 S.W.3d 844, 847 (Tex. App.—Dallas 2013, no pet.)). A landowner owes an invitee "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). "An invitee need only prove that the owner knew or reasonably should have known of a dangerous condition, whereas a licensee must prove that the premises owner actually knew of the dangerous condition." *Viel*, 523 S.W.3d at 892 (citations omitted). An invitee can prevail in a premise-liability case by

7

proving either that the owner "had actual or constructive knowledge of a dangerous condition on the premises." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 813 (Tex. 2002).

A landowner's duty to an invitee is not absolute. *Austin*, 465 S.W.3d at 203. In particular, a landowner generally has no duty "to take safety measures beyond those that an ordinary, reasonable landowner would take." *Id*. at 204 (describing this as the general "no-duty rule"). "[I]n most circumstances, a landowner who provides an adequate warning acts reasonably as a matter of law, and since there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Id*. However, under the necessary-use exception to this general no-duty rule, a landowner has a "duty to make its premises safe when, despite an awareness of the risks, it is necessary that the invitee use the dangerous premises and the landowner should have anticipated that the invitee is unable to take measures to avoid the risk." *Id*. at 208 (citing *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520–21 (Tex. 1978)). This exception applies to "common areas," *id*. at 213, where a landowner "retains in his own control any [part of the premises] which is necessary to the safe use of the leased part," such as "the entrance to an apartment house" where "there is no other available entrance[.]" *Parker*, 565 S.W.2d at 515 (quoting RESTATEMENT (SECOND) OF TORTS § 361).

"Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction," which we review de novo. *Sampson*, 500 S.W.3d at 384 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)); *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). A governmental entity's plea

8

to the jurisdiction can be based on the pleadings or on evidence. *Miranda*, 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id*.

> If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.

*Id*. at 226–27 (citation omitted).

On the other hand, if "the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id*. at 221. In some circumstances, "the pleadings and record [will] neither demonstrate jurisdiction nor conclusively negate it[.]" *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012). When this occurs,

> in order to obtain dismissal of the plaintiff's claim, the defendant entity has the burden to show either that the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings; or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. If the governmental entity meets this burden, then the appellate court should dismiss the plaintiff's case.

*Id*. (citations omitted).

### III.     DISCUSSION

Appellants argue in their opening brief that (1) SAHA, SP II, and Lincoln are each

9

entitled to governmental immunity, and (2) Herrera was required to show that appellants had actual knowledge of the complained-of defect. In their reply brief, appellants further argue that (3) even if actual knowledge were not required, Herrera has not properly alleged or demonstrated constructive knowledge.

## A. Each Appellant is Entitled to Immunity

Appellants argue that although SP II and Lincoln are private entities, they share in SAHA's governmental immunity. We agree. Texas law expressly provides that housing authorities, such as SAHA, are to be considered units of government entitled to immunity for purposes of the TTCA. TEX. LOCAL GOV'T CODE § 392.006; *see San Antonio Hous. Auth. v. Serento Apartments, LLC*, 478 S.W.3d 820, 824 (Tex. App.—San Antonio 2015, no pet.) ("As a public housing authority organized pursuant to the constitution and laws of the State of Texas, SAHA is a local governmental entity entitled to immunity from suit in the performance of its governmental functions unless the State of Texas waived such immunity.").

Appellants argue that SP II is entitled to immunity because it is a title-holding subsidiary entity whose sole purpose is to hold title to assets for the benefit of SAHA. We agree. The McLaurin affidavit provides that SP II is a limited partnership "created in 2001 for the sole purpose of holding title to real property for the benefit of SAHA," SP II "operates the Property solely upon the direction of SAHA and exercises no discretion in its activities," and SP II has "no discretion to engage in any activity such as capital improvements like replacing sidewalks or apartment foundations without SAHA's direction and approval."

Where, as here, a corporation is created by a governmental unit for the sole

10

purpose of holding title for the benefit of that governmental unit, and exercises no discretion in its activities, the title-holding subsidiary corporation is likewise entitled to immunity. *See K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994) (concluding that the Kansas Debt Fund (K.D.F.), a general partnership created by a bank to hold securities on behalf of the Kansas Public Employees' Retirement System (KPERS), was entitled to governmental immunity because "K.D.F. operates solely upon the direction of KPERS, and exercises no discretion in its activities"); *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that TRST Corpus, Inc., a title-holding subsidiary corporation, was entitled to governmental immunity because it "is owned and entirely controlled by the TRS," the Texas Retirement System of Texas, and TRST's "sole purpose is to hold title to a multi-million dollar asset for the benefit of TRS members"); *see also Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 80 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("The common factor in *TRST* and *K.D.F.* (on which *TRST* relied) was not status as a wholly-owned subsidiary, but, instead, the two entities' roles as asset-holding agents serving ministerial functions, without discretion, for their principals.").

Lastly, because appellants' evidence showed that Lincoln likewise had no discretion to act with respect to the complained-of defect, and could not have replaced the broken sidewalk/entryway without SAHA's authority, Lincoln is also entitled to immunity. *See K.D.F.*, 878 S.W.2d at 597. In particular, Lincoln is entitled to derivative governmental immunity. As the Fourth Court of Appeals has noted, "[t]o be entitled to derivative immunity, a defendant must show 'the complained-of conduct . . . was effectively attributed to the government'; to wit, the defendant acted '*as* the government

without discretion.'" *Orion Real Estate v. Sarro*, 559 S.W.3d 599, 607 (Tex. App.—San Antonio 2018, no pet.) (first citing *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 (Tex. 2015); and then citing *Lenoir*, 491 S.W.3d at 86). Because appellants' evidence establishes that Lincoln lacked discretion in its activities with respect to the uneven, broken sidewalk/entryway, and Herrera did not provide any contradictory evidence on this jurisdictional fact, Lincoln is entitled to derivative governmental immunity. Thus, unlike the property manager in *Orion Real Estate*, who unsuccessfully claimed derivative governmental immunity as an agent of SAHA based on a dog bite sustained in an apartment complex, appellants here have successfully presented evidence "that [they] acted without discretion and at the direction of SAHA regarding" the complained-of defect. *Id*. For all the above reasons, we conclude that each appellant is entitled to assert a claim of governmental immunity. We next address appellants' argument that Herrera was required to show actual knowledge.

**B.    Actual Knowledge is not Required**

Appellants argue that that they are entitled to governmental immunity because Maria was a licensee, Herrera has not sufficiently pleaded actual knowledge, and the evidence otherwise affirmatively negates actual knowledge. Noting that it was undisputed that Maria was a tenant who paid rent, Herrera argues in her brief that the text of § 101.022(a) requires that Maria be classified as an invitee because she paid for use of the premises, and thus actual knowledge is not required. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (providing that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, *unless the claimant pays for the use of the premises*"

12

(emphasis added)). Appellants do not dispute Herrera's statutory argument, but rather argue that actual knowledge is required because Herrera's argument "is premised on the false assumption that [Maria] fell in a common area, when the evidence relevant to jurisdiction—including [Herrera's] verified discovery responses—prove that [Maria's] alleged fall took place on her leased property." Appellants also complain about Herrera's amended petition, and the insertion of the term "common area" and the replacement of the word term "sidewalk/entryway" with the word "sidewalk." Appellants argue that these changes are an attempt to obscure the fact that Maria "fell at the entryway to her apartment, which is a portion of the Property that was leased by [Maria] and would only be used by [Maria] and her guests."

Appellants, in arguing that actual knowledge is required, do not dispute the applicability of the exception to licensee liability found in § 101.022(a) based on Maria's payment of rent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a); *Viel*, 523 S.W.3d at 892 ("If the claimant pays for use of the premises, the [governmental unit's] duty is elevated to that owed to an invitee."). Appellants' concerns with issues of common areas or control of the premises are not relevant to whether § 101.022(a) applies in the first instance, as the only requirement to trigger the exception to licensee liability is "pay[ment] for the use of the premises," and nowhere includes a requirement that the injury occur in a common area. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a); *see also City of Fort Worth v. Posey*, 593 S.W.3d 924, 929 (Tex. App.—Fort Worth 2020, no pet.) ("[A]ccording to the statute's plain language, a person is entitled to invitee status if the person paid to use the premises, regardless of whether other members of the public might also be present without paying."). Rather, those issues pertain to the invitee-specific questions of

13

whether the general no-duty rule applies, or whether the necessary-use exception applies. *See Austin*, 465 S.W.3d at 208; *Parker*, 565 S.W.2d at 515. For all the above reasons, Maria was an invitee and Herrera was not required to show actual knowledge to sustain her premise-defect claim. *See Reece*, 81 S.W.3d at 813.

## C.    Issue of Constructive Knowledge Requires Remand

In their reply brief, appellants alternatively argue that they are entitled to governmental immunity because Herrera failed to sufficiently establish constructive knowledge, arguing that the "pleadings are devoid of any facts or allegations regarding how long the alleged defect existed and whether that would be enough time to impute constructive knowledge onto [a]ppellants." *See id.* at 816 (noting that "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition"); *see also Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 315 (5th Cir. 2003) ("[T]he rule in Texas is that temporal evidence . . . is the *sine qua non* of a premises owner's constructive knowledge.").

Ordinarily, the failure to raise an issue until a reply brief results in waiver of the issue. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court."). However, we may not find a briefing waiver of an immunity issue as we have an independent obligation "to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it," *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013), and to "address a governmental immunity argument even when raised for the first time on appeal." *El Paso*

*Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 196 (Tex. App.—El Paso 2018, no pet.) (citation omitted); *see Dallas Metrocare Servs. v. Juarez,* 420 S.W.3d 39, 41 (Tex. 2013) (per curiam) ("Under *Rusk,* an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all.").

Addressing constructive knowledge, this case presents a situation where "the pleadings and record neither demonstrate jurisdiction nor conclusively negate it[.]" *Rusk*, 392 S.W.3d at 96. From her original petition, Herrera argued that appellants were liable because they "knew or should have known of the uneven, broken sidewalk/entryway," and set out a premises-liability claim based on constructive knowledge. Neither appellants' answer nor its motion to dismiss addressed constructive knowledge, only asserting that actual knowledge could not be shown and thus Herrera's claim fails. Appellants did not argue that they were entitled to immunity because Herrera could not establish constructive knowledge until a reply filed on the same day as the hearing on appellants' motion to dismiss. Because no record was made, we are unable to say whether and to what extent the trial court addressed constructive knowledge. Furthermore, because appellants did not raise constructive knowledge until their reply brief, Herrera has been unable to properly present an argument in support of constructive knowledge to this Court. Nor was Herrera able to address whether remand would be appropriate under the circumstances. Appellants also did not address the propriety of remand as to the issue of constructive knowledge.

Under the circumstances described above, it is unclear whether Herrera had a "full and fair opportunity in the trial court to develop the record and amend the pleadings" as

15

to the issue of constructive knowledge. *Id*. Because appellants bear the burden of showing that Herrera received a full and fair opportunity to develop the record or amend, *see id.*, the ambiguity in the record cuts against appellants. Appellants also had the burden of showing that if Herrera did not receive a full and fair opportunity to develop the record or amend her pleadings, that she "would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded." *Id*. Appellants failed to address this issue. Accordingly, remand is appropriate in this case. *See id.* at 100 ("The Hospital has not shown conclusively by this record either that they had a full and fair opportunity in the trial court to develop the record as to jurisdiction and amend their pleadings, or that if the case is remanded to the trial court for further proceedings they will be unable to show jurisdiction. Thus, the cause will be remanded to the trial court for further proceedings.").

## IV. CONCLUSION

We reverse and remand to the trial court for further proceedings consistent with this opinion.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
30th day of January, 2025.

16